UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD JOHNSON,<br><br>              Plaintiff,<br><br>       v.<br><br>HUMBERTO RODRIGUEZ,<br><br>              Defendant. | Case No.: 1:12-cv-00820-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 22] |

Plaintiff Leonard Johnson is proceeding in this civil rights action pursuant to 42 U.S.C. § 1983, which was removed from the Fresno County Superior Court and filed here on May 16, 2012. Plaintiff is represented by Hasmik Geghamyan, Esq.

The action is proceeding against Defendant Humberto Rodriguez based on Plaintiff's claim of excessive force. On August 11, 2014, Defendant Rodriguez filed a motion for summary judgment. On December 1, 2014, Plaintiff filed an opposition to Defendant's motion for summary judgment, and Defendant filed a reply on December 5, 2014.

## I.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

///

# II.

# DISCUSSION

### A. Allegations of Complaint

On February 8, 2011, Plaintiff's complete name was called over the intercom for medication. Plaintiff responded to the officer to address the matter. Correctional Officer Rodriguez handcuffed Plaintiff, then continued to use excessive and unnecessary force upon his person by bending and twisting his wrist and arm causing excruciating pain and refused his complaints to stop. As a result of the force, Plaintiff suffered extreme physical pain, mental anguish, and severe emotional distress for which he sought and received medical treatment.

### B. Undisputed Facts[1]

1. Plaintiff Johnson was incarcerated at Pleasant Valley State Prison (PVSP) on February 8, 2011.

2. On February 8, 2011, Johnson's full name was called over the intercom at PVSP to go to an office to receive medication.

3. On February 8, 2011, Johnson's full name was called over the intercom at PVSP, which Johnson felt was unusual, since his understanding of the Title 15 regulations specified that inmates were to be called by their last names, only.

4. Johnson was startled when he heard his full name called twice over the intercom, and proceeded to the office, where he asked the employee why Johnson's entire name was called.

5. When Johnson arrived at the office, the employee who had called his name, a Medical Technical Assistant (MTA), Officer Rodriguez, and Officer Buckley were in the office.

6. In the office, Johnson asked why his full name had been called over the intercom, and Officer Rodriguez responded that there was nothing wrong with stating Johnson's entire name.

7. The MTA then threw Johnson's pill at him, and Johnson took the pills out of an envelope, threw the envelope back at the MTA, and left the office.

---

[1] These facts are compiled by the parties' submissions where not in dispute.

8. Officer Rodriguez immediately went to Plaintiff's bed area and got into Johnson's face while Johnson was in his bed, Bunk 112 low.

9. During this encounter, Johnson and Officer Rodriguez were standing nose to nose.

10. Several minutes later, Johnson's full name was called a second time over the intercom to come to the office.

11. Johnson proceeded back to the office, and Officer Rodriguez, Officer Buckley, and the MTA were present inside the office.

12. Officer Rodriguez grabbed Johnson's right wrist which was placed against the wall, twisted it while moving Johnson's arm behind Johnson's back and applied the handcuff which was tightened all the way. Then, he grabbed Johnson's left wrist, twisted it while moving his arm behind Johnson's back and then applied the handcuff. The handcuffs were tightened all the way.

13. Johnson had experienced a prior injury to his right wrist in approximately 1992-1993 which caused him to undergo an operation on his right wrist, to miss two years from work, and to experience on-going pain.

14. During the incident of February 8, 2011, involving Johnson, no alarm was sounded and no oleocapsicum resin pepper spray was used on Johnson.

**C.    Defendant's Motion for Summary Judgment**

1. <u>Excessive Force</u>

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). In order to be held liable, each defendant must have personally participated in the deprivation of the plaintiff's rights. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677 (2009); <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002). When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992) (citing <u>Whitley v. Albers</u>, 475 U.S. 312, 320-321 (1986). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of

1  force, the relationship between the need and the amount of force used, the threat reasonably perceived
2  by the responsible officials, and any efforts made to temper the severity of the forceful response.
3  Hudson, 503 U.S. at 7.

4       A prison official's use of force to maliciously and sadistically cause harm violates the
5  contemporary standards of decency. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). However, "[n]ot
6  'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Wilkins, 559 U.S.
7  at 37 (quoting Hudson, 503 U.S. at 9). Factors that can be considered are "the need for the application
8  of force, the relationship between the need and the amount of force that was used, [and] the extent of
9  injury inflicted." Whitley, 475 U.S. at 321; *accord* Marquez v. Gutierrez, 322 F.3d 689, 692 (9th Cir.
10 2003). Although the extent of the injury is relevant, the inmate does not need to sustain a serious
11 injury. Hudson, 503 U.S. at 7; Wilkins, 559 U.S. at 37-38. The Eighth Amendment's prohibition on
12 cruel and unusual punishment necessary excludes from constitutional recognition de minimus uses of
13 physical force. Hudson, 503 U.S. at 9-10.

14     2.    Defendant's Position

15      Defendant Rodriguez argues that the undisputed facts establish that he applied the handcuffs to
16 Johnson on February 8, 2011, in order to maintain control over Johnson, to prevent violence on
17 Johnson's part, and that Rodriguez did not act maliciously or with intent to harm Johnson. In addition,
18 because Defendant Rodriguez acted in a good faith effort to maintain order and discipline and in
19 compliance with CDCR regulations, he is entitled to qualified immunity.

20      In support of his motion, Defendant submits his own declaration and a declaration by
21 Correctional Counselor II Specialist, William Adams.

22      Defendant Rodriguez declares that, in relevant part:

23 On February 8, 2011, I was working at Pleasant Valley State Prison as a correctional
    floor officer, assigned to the gymnasium. During medication pass, Licensed Vocational
24 Nurse P. Mumford called the names of several inmates over the loudspeaker, asking the
    inmates, including inmate Johnson (V-79518), to report to the medical officer to
25 receive medication. I was at the medical office, along with Officer D. Buckley, and
    LVN P. Mumford. When inmate Johnson (V-79518) arrived at the medical office, he
26 appeared to be agitated and upset, complaining about his full name had been announced
    over the loudspeaker. During this encounter, inmate Johnson was asked to sign a form
27
28

5

concerning his medication. After signing the form, inmate Johnson threw it at LVN Mumford and left the office.

I then followed inmate Johnson to his bunk in the gymnasium, so that I could counsel him concerning the incident when he threw the form at LVN P. Mumford. I pointed out to inmate Johnson that, if the form had actually struck LVN P. Mumford, inmate Johnson could be charged with an assault on staff. Inmate Johnson responded by arguing that LVN P. Mumford had through the form at him first, stating "throw me in the hole," and cursing. During this encounter, inmate Johnson and I were facing each other, our faces separated by a few inches. During this encounter, it appeared to me that inmate Johnson was upset and agitated. I then returned to the medical office.

Shortly after this encounter, inmate Johnson's full name again was called over the loudspeaker, and inmate Johnson was asked to come to the medical office. I was at the medical office, along with Officer D. Buckley, and LVN P. Mumford. When inmate Johnson arrived at the medical office, he again appeared to be upset, agitated, and argumentative, complaining that his full name had been called over the loudspeaker.

Having observed inmate Johnson's behavior in the medical office when his full name first was called over the loudspeaker, and inmate Johnson's behavior during my encounter at his bunk, I was concerned that inmate Johnson would become violent after his name had been called over the loudspeaker a second time. In order to prevent this from occurring, I ordered inmate Johnson to place his hands behind his back and submit to handcuffs. I also utilized the institutional radio to call for assistance from yard staff.

It was necessary to twist inmate Johnson's wrists in order to properly position Johnson's hands and wrists so that the handcuffs could be properly applied. In applying the handcuffs, I was concerned that the handcuffs be properly applied and was not acting maliciously or with intent to harm inmate Johnson.

It also was necessary to apply the handcuffs tight enough to prevent inmate Johnson from slipping out of them. In tightening the handcuffs on inmate Johnson, I was concerned that the handcuffs be properly applied and was not acting maliciously or with intent to harm inmate Johnson.

After applying the handcuffs to inmate Johnson, I waited several minutes for yard staff to arrive. When no one responded to my request for assistance, Officer Buckley escorted inmate Johnson to the Program Office.

At all times during my encounter with inmate Johnson on February 8, 2011, I was attempting to maintain control over inmate Johnson in order to prevent any violence on his part. At no time on February 8, 2011, did I act maliciously or with intent to harm inmate Johnson.

(Ex B., Declaration of H. Rodriguez at ¶¶ 3-9.)

1   William Adams declares, in relevant part that Defendant Rodriguez was justified in placing
2   handcuffs on inmate Johnson on February 8, 2011, because Rodriguez reasonably perceived Johnson's
3   emotional state was such that he may have become violent when he returned a second time to pick up
4   his medication after hearing his full name called over the loudspeaker.  (Ex. C., Declaration of
5   William Adams at ¶ 10.)
6        3.     Plaintiff's Position

7   Plaintiff argues that a genuine issue of material fact exists as to whether Defendant Rodriguez
8   used excessive force when he tightened the handcuffs all the way and applied pressure for four-six
9   minutes by lifting Plaintiff's twisted hands from his back, and Rodriguez is not entitled to qualified
10  immunity because his conduct clearly violated an established constitutional right.  In support of his
11  opposition, Plaintiff cites to his deposition testimony.  During his deposition, Plaintiff explained that
12  on February 8, 2011, his full name was called over the loudspeaker and when he went to the office, he
13  identified himself and asked why his full name was used over the speaker.  Officer Rodriguez
14  immediately went to Plaintiff's bed area and got into Plaintiff's face, standing nose to nose with
15  Plaintiff and stated, "I know what to do with guys like you."  (ECF No. 22, Ex. A, Dep. of Plaintiff, at
16  50.)  Plaintiff's full name was called over the loudspeaker a second time to report to the office.  When
17  Plaintiff arrived at the office, Rodriguez was standing by the door.  When he went inside, Rodriguez
18  slammed the door, took his jacket off and ordered Plaintiff to get against the wall for which Plaintiff
19  complied.  Plaintiff then asked, "well, what do you guys want with me now?"  Officer Rodriguez then
20  grabbed Plaintiff's right wrist which was placed against the wall, twisted it while moving Plaintiff's
21  arm behind Plaintiff's back and applied the handcuff which was tightened all the way.  Rodriguez then
22  grabbed Plaintiff's left wrist, twisted it while moving his arm behind Plaintiff's back and then applied
23  the handcuff.  The handcuffs were tightened all the way.  Officer Rodriguez applied pressure on his
24  handcuffed hands for four to six minutes by lifting his hands up which caused excruciating pain for
25  Plaintiff.  His hands and shoulders stared to go numb because of the tightness of the handcuffs.
26  The excruciating pain almost made Plaintiff cry and he asked for help from officer Buckley
27  who told Rodriguez to let him go three times.  Officer Rodriguez still did not let him go and officer
28

7

1  Buckley intervened and stopped the attack.  It took three correctional officers to remove the handcuffs
2  because they were so tight.

3        Plaintiff experienced a lot of pain in his right shoulder, arm and wrist.  He was seen by a
4  female MTA shortly after he complained about the pain to a sergeant that helped him remove the
5  handcuffs with two other officers.  The right wrist was starting to swell and he had deep marks on the
6  handcuffs in his wrist and it was burning.

7        Plaintiff's left wrist was swollen at the time he was seen by a female MTA but the handcuff
8  prints were visible because of the tightness of the handcuffs and the left wrist had minor cuts.

9      4.    <u>Findings</u>

10      **a.**    **<u>Excessive Force</u>**

11        The Ninth Circuit has long recognized that excessively tight handcuffs may constitute
12  excessive force.  <u>See, e.g.</u>, <u>Wall v. County of Orange</u>, 364 F.3d 1107, 1112 (9th Cir. 2004) (finding
13  that ignoring a prisoner's repeated pleas to remove handcuffs could constitute excessive force where
14  the tightness of the cuffs causes the prisoner lasting pain or injury).

15        Viewing the facts in Plaintiff's favor, this Court cannot find that Rodriguez's conduct on
16  February 8, 2011, was "objectively reasonable in light of the facts and circumstances confronting
17  them."  There are a large number of material facts in dispute regarding the incident which took place
18  on February 8, 2011.  Based on disputed facts, Rodriguez placed the handcuffs on Plaintiff so tightly
19  that Plaintiff's hands and shoulder started to go numb, and Rodriguez ignored Plaintiff's request (and
20  Officer Buckley's request) to loosen Plaintiff's handcuffs.  Rodriguez then applied pressure for four to
21  six minutes by lifting Plaintiff's twisted hands (in handcuffs) from his back, and there is no evidence
22  that Plaintiff resisted the application of handcuffs.  As a result, Plaintiff suffered excruciating pain in
23  his right shoulder, arm and wrist.

24        In this instance, the Court is presented with two conflicting declaration and/or deposition
25  testimony of the two percipient witnesses, Plaintiff and Defendant Rodriguez, and their description of
26  the incident which took place on February 8, 2011, differs in material aspects.  Defendant Rodriguez
27  argues that there is no evidence of a significant injury suffered by Plaintiff.  However, Plaintiff
28  suffered a lot of pain in his right shoulder, arm and wrist, swelling and deep marks on his right wrist,

1  and minor cuts on his left wrist, and the extent of his injury or lack thereof is not dispositive.  Under
2  the Eighth Amendment, the determination is not whether the Plaintiff's injuries are de minimis, but
3  rather whether the use of force was de minimis.  See Wilkins v. Gaddy, 559 U.S. at 37 ("Injury and
4  force … are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is
5  gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely
6  because he has the good fortune to escape without serious injury.")  Thus, the extent of the injuries
7  suffered by Plaintiff is one factor in determining whether the force used was excessive, but is not a
8  determinative factor.  Id.

9        Furthermore, Defendant Rodriguez's argument that Plaintiff failed to present evidence relating
10 to his perceptions or mental state, is without merit.  Defendant essentially argues that he must have
11 acted with specific rather than general intent.  However, the appropriate standard under the Eighth
12 Amendment is whether the defendant applied force "maliciously and sadistically for the very purpose
13 of causing harm,-that is any harm." Robins v. Meecham, 60 F.3d 1436, 1441 (9th Cir. 1995).  Under
14 Plaintiff's version of the facts, Plaintiff did not resist the application of handcuffs, yet Defendant
15 Rodriguez  applied the handcuffs so tightly it caused Plaintiff's hands and shoulders to go numb and
16 then force thereafter for the malicious and sadistic purpose of causing harm in violation of the Eighth
17 Amendment prohibits.  Therefore, a reasonable jury could conclude that Defendant intended to punish
18 Plaintiff and applied force "maliciously and sadistically for the very purpose of causing harm,'-that is
19 any harm."  Robins v. Meecham, 60 F.3d at 1441.  Consequently, the disputed facts preclude the
20 granting of summary judgment in favor of Defendant Rodriguez, and his motion should be denied.

21       **b.**    **Qualified Immunity**

22       Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an
23 absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Mueller v.
24 Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted).  Qualified
25 immunity shields government officials from civil damages unless their conduct violates "clearly
26 established statutory or constitutional rights of which a reasonable person would have known."
27 Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important
28 interests - the need to hold public officials accountable when they exercise power irresponsibly and the

1  need to shield officials from harassment, distraction, and liability when they perform their duties
2  reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly
3  incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

4        In resolving the claim of qualified immunity, the Court must determine whether, taken in the
5  light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether
6  the right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993.
7  While often beneficial to address in that order, the Court has discretion to address the two-step inquiry
8  in the order it deems most suitable under the circumstances.  Pearson, 555 U.S. at 236 (overruling
9  holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is
10 reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

11       In this instance, the evidence viewed in the light most favorable to Plaintiff demonstrates a
12 constitutional violation and there exist triable issues of fact as to whether that right was violated.
13 Therefore, the Court proceeds without further discussion to the second step of the inquiry.

14       "For a constitutional right to be clearly established, its contours must be sufficiently clear that a
15 reasonable officer would understand that what he is doing violates that right."  Hope v. Pelzer, 536
16 U.S. 730, 739 (2002).  While the reasonableness inquiry may not be undertaken as a broad, general
17 proposition, neither is official action entitled to protection "unless the very action in question has
18 previously been held unlawful."  Hope, 536 U. S. at 739.  "Specificity only requires that the
19 unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir.
20 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates
21 established law even in novel factual circumstances," Hope, 536 U.S. at 741.

22       Rodriguez has presented no evidence that, even if handcuffs were initially justified,
23 handcuffing Plaintiff so tightly that he suffered excruciating pain and refusal to loosen the handcuffs
24 after Plaintiff complained of pain was justified.  Under these circumstances, no reasonable officer
25 could believe that the abusive application of handcuffs was constitutional.  See, e.g., Palmer v.
26 Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993) (affirming the denial of qualified immunity on an
27 excessive force claim where defendants unnecessarily fastened handcuffs so tightly around plaintiff's
28 wrists that they caused him pain and left bruises and refused to loosen the handcuffs after plaintiff's

complaint of pain); Alexander v. Perez, 124 F. App'x. 525, 526 (9th Cir. 2005) ("Since 1992 the legal standard articulated in Hudson has provided officers with ample notice that malicious or sadistic use of force is unlawful."). Accordingly, Defendant Rodriguez is not entitled to qualified immunity.

### IV.
### RECOMMENDATION

Based on foregoing, IT IS HEREBY RECOMMENDED that Defendant Rodriguez's motion for summary judgment be DENIED.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 22, 2014**

UNITED STATES MAGISTRATE JUDGE